IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM MOORE, | ) |
| PLAINTIFF, | ) ) ) CIVIL ACTION NO. 20- |
| VS. | ) ) |
| UTILITY METERING SOLUTIONS, | ) ) HON. |
| DEFENDANTS. | ) ) ) |

## COMPLAINT

PLAINTIFF, WILLIAM E. MOORE, by and through his attorney, CARLA D. AIKENS, P.C., submits the following Complaint against DEFENDANT UTILITY METERING SOLUTIONS.

## JURY DEMAND

COMES NOW PLAINTIFF, WILLIAM E. MOORE, and hereby makes his demand for trial by jury.

## JURISDICTION

1. Plaintiff William Moore was a resident of Wayne County in the State of Michigan at all times relevant to this action.

2. Defendant Utility Metering Solutions ("Defendant") is a product-independent firm specializing in the design, build, integration, and maintenance of utility programs, including Metering-as-a Service, Advanced Metering, Billing Systems, Smart City Design & Integration, and Water Conservation. Defendant has a continuous and systematic place of business at 211 East Thomas Street, Hammond, LA 70401.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5. Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6. On or about January 3, 2018, Defendant hired Plaintiff Moore as a Water Meter Installer in the Northville, MI area. Mr. Moore was the only African-American male employed in that area by Defendant.

7. Defendant paid employees a sliding scale wage depending upon the size of the meter installation. Intermediate meters measure about three-quarter inches to one and one half inches. Defendant paid employees $25 per intermediate meter installation. Large meters measured about two to three inches. Defendant paid $65 per large meter installation.

8. While employed with Defendant, Mr. Moore's direct supervisors were Rick Soper ("Soper") and Robert "Robbie" Gibson ("Gibson"). Both supervisors are white, upon information and belief..

9. Throughout his employment with Defendant, Mr. Moore's work schedule was inconsistent and based on customer needs. Defendant lined up work for Mr. Moore to complete. Some days Mr. Moore worked, some days he did not work. Mr. Moore would call his supervisor no later than the day before to find out what, if anything, needed to be accomplished

at work for the next day. Mr. Moore worked successfully for Defendant and without incident under these terms for three years.

10. In or around December 2019, Mr. Moore informed Supervisor Soper that he needed time off work in February 2020 because Mr. Moore was getting married. Mr. Moore requested February 14, 2020 – February 21, 2020 off work. Supervisor Soper approved Mr. Moore's leave.

11. In or around January 2020, Defendant promoted Soper. Gibson became Mr. Moore's direct supervisor.

12. On or about Sunday, February 9, 2020, Mr. Moore called Supervisor Gibson to let him know that Soper approved his leave to get married.

13. On or about February 14, 2020, Mr. Moore got married. He took the week of February 14 – 21, 2020 off work to enjoy his honeymoon.

14. On or about February 24, 2020, Mr. Moore returned to work. Defendant had very little to no work lined up for Mr. Moore upon his return. Mr. Moore completed about seven jobs over four days (Monday – Thursday).

15. Around the same time, Defendant treated Mr. Cunningham, a white male, better than Mr. Moore. Mr. Cunningham and Mr. Moore were similarly situated employees (Installer) with Defendant. Mr. Cunningham told Mr. Moore that he had no training on large meters. Despite having less experience and seniority than Mr. Moore, Defendant assigned large meters to Mr. Cunningham months after hiring Mr. Cunningham. Eventually, Defendant assigned Mr. Cunningham to meters that had previously been assigned to Mr. Moore. This contributed to Defendant having no work for Mr. Moore to complete.

16. Conversely, Mr. Moore was not provided the same advancement opportunities, (*i.e.* the ability to work on large meters), as quickly as his white co-workers. Defendant required Mr. Moore to work on small meters for the first two years of his employment. Defendant required Mr. Moore undergo three days of training with Ethan Evans to learn how to install large meters. As such, Defendant denied Mr. Moore promotion opportunities and equal access to employment rights based on his race. Mr. Moore is responsible for raising two boys and a girl. Defendant caused Mr. Moore further economic harm by stifling his family life.

17. On or about Friday, February 28, 2020, Mr. Moore called Supervisor Gibson to check and see if Defendant had any work for Mr. Moore. Gibson said there was no work, but a supervisor would call if there was work for Mr. Moore. Nobody from Defendant called Mr. Moore back on February 28, 2020.

18. On the same day, on or about February 28, 2020, similar to Mr. Moore, Caleb Smelcer (white male) did not report to work, either. Defendant did not write up Mr. Smelcer for absenteeism. Defendant did not fire Mr. Smelcer. Defendant failed to consistently apply its policies.

19. On the same day, on or about February 28, 2020, similar to Mr. Moore, Tyler Beemer (white) did not report to work. Defendant did not write up Mr. Beemer for absenteeism. Defendant did not fire Mr. Beemer. Defendant failed to consistently apply its policies.

20. On or about March 2, 2020, Supervisor Soper presented a "disciplinary report form" to Mr. Moore for "absenteeism." This was Mr. Moore's first alleged infraction for attendance issues. Soper alleged Mr. Moore "did not show up to work on Friday 2/28/20 and did not call in or let anybody know." Defendant failed to investigate or otherwise attempt to figure out why Mr. Moore did not work on Friday, February 28, 2020. The disciplinary form further

stated, "[a]ny future mistakes like [absenteeism] will result in additional disciplinary action up to termination." The form contained an "Employee Acknowledgement" section, which Mr. Moore refused to sign because the allegations were untrue. Mr. Moore complained to his supervisor about unfair treatment and discrimination based upon his race.

21.     The next day, on or about March 3, 2020, Defendant discharged Mr. Moore. Defendant acknowledged Mr. Moore was a good employee, stating he was a "serviceable installer." Defendant fired Mr. Moore allegedly for absenteeism. Supervisor Soper signed Mr. Moore's termination papers.

22.     Defendant has a history of discriminating against employees based on race and/or national origin, including an Arabic male who had job duties stripped from him in favor of white males.

## PROCEDURAL HISTORY

23.     On January 21, 2021, Mr. Moore filed a race discrimination, retaliation, and violation of civil rights charge with the Equal Employment Opportunity Commission ("EEOC").

24.     On or about February 8, 2021, the EEOC mailed a Right To Sue Notice to Mr. Moore, giving Mr. Moore the right to bring this action in the U.S. District Court within 90 calendar days of receipt of the Notice. This action is filed within 90 days of the receipt of the Right To Sue Notice.

## COUNT I
## HARASSMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

25. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

26. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

27. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race.

28. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff's and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

29. Plaintiff is an African-American man, and, as a result, is a member of a protected class pursuant to Title VII.

30. Plaintiff was subjected to offensive conduct on the basis of his membership in this protected class.

31. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

32. Plaintiff notified Defendant, through its agents, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

33. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

34. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

35. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

36. Plaintiff requests the relief as described in the Prayer for Relief below.

### COUNT II
### HARASSMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

37. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

38. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of the ELCRA.

39. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to harass or discriminate against an employee because of their race or skin color.

40. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

41. Plaintiff is an African-American male and within a protected class. As a result, Plaintiff is a member of a protected class pursuant to Title VII.

42. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

43. The communication and conduct was unwelcomed.

44. This unwelcomed conduct and communication was intended to or in fact did substantially interfere with the Plaintiffs employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

45. Plaintiff notified and complained to Defendant through its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

46. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

47. Plaintiff request relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII

48. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

49. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

50. At all material times, Plaintiff was an employee covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

51. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

52. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

53. Plaintiff engaged in protected activity when he refused to sign Defendant's disciplinary form and complained about unfair and unequal treatment compared to other white employees.

54. Defendant's, through their employees, had knowledge that Plaintiff engaged in protected behavior because Plaintiff gave direct notice to his supervisors.

55. Despite Defendant's disciplinary form stating, "[a]ny future mistakes" would result in "additional disciplinary action up to termination," Defendant discharged Plaintiff the day after Plaintiff engaged in protected activity. Defendant discharged Plaintiff because of his protected complaints. Defendant failed to follow its own progressive discipline, retaliation, and discrimination policy and procedures.

56. Defendant's and their agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

57. Plaintiff notified Defendant's and their agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

58. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

59. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

60. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT ("ELCRA")

61. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

62. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

63. Defendant's conduct, as alleged herein, violated the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., which makes it unlawful to retaliate against an employee who has engaged in protected activity.

64. A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

65. Plaintiff engaged in protected activity when he refused to sign Defendant's disciplinary form and complained about unfair and unequal treatment compared to other white employees.

66. Defendants, through their employees, had knowledge that Plaintiff engaged in protected behavior because Plaintiff gave direct notice to his supervisors.

67. Despite Defendant's disciplinary form stating, "[a]ny future mistakes" would result in "additional disciplinary action up to termination," Defendant discharged Plaintiff the day after Plaintiff engaged in protected activity. Defendant discharged Plaintiff because of his protected complaints. Defendant failed to follow it's own progressive discipline, retaliation, and discrimination policy and procedures.

68. Defendants and their agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

69. Plaintiff notified Defendant's agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

70. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

71. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

72. Plaintiff requests relief as described in the Prayer for Relief below.

<u>**COUNT V**</u>
**WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY AS TO DEFENDANT EMPLOYER**

73. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

74. It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge, where:

(1) Explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;

(2) The alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and

(3) The reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

75. Plaintiff's discharge came as the result of the fact that he stood up for the rights that were promised to him in different civil rights statutes by insisting that Defendant run its business in a manner that is free from racial discrimination.

76. These rights are conferred to Plaintiff by well-established legislative enactments, specifically including, but not limited to, Title VII & the ELCRA.

77. ELCRA, and Title VII all have explicit language that prohibits the discharge,

discipline, or other adverse treatment of Plaintiff; however, Defendant retaliated against Plaintiff for attempting to protect his rights as laid out in these statutes.

78. As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

79. Plaintiff requests relief as described in the Prayer for Relief below.

80. As such, Plaintiff is entitled to relief as set forth below.

## RELIEF REQUESTED

PLAINTIFF, WILLIAM E. MOORE respectfully request that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: May 7, 2021                    Respectfully Submitted,

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
CARLA D. AIKENS, P.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226

carla@aikenslawfirm.com