UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM MOORE**, | **2:21-cv-11063-TGB-APP** |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD (ECF NOS. 7 & 8)** |
| **UTILITY METERING SOLUTIONS**, | |
| Defendant. | |

In this case, Plaintiff William Moore is challenging the decision of the Arbitrator to dismiss his claims against his former employer, Defendant Utility Metering Solutions ("UMS").

Moore had brought suit against UMS for Harassment & Discrimination on the Basis of Race in Violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Retaliation in Violation of Title VII and ELCRA, and Wrongful Discharge in Violation of Michigan Public Policy. ECF No. 1.

The parties stipulated to final and binding arbitration which occurred over a three-day trial in front of the Honorable James J. Rashid. During the trial, the only remaining claims were (1) wrongful termination based on his race under Title VII and ELCRA and (2) wage and hour claims under the Fair Labor Standards Act ("FLSA") and the Michigan Improved Workforce Opportunity Wage Act ("IWOWA"). Judge

Rashid eventually dismissed these claims as well. ECF No. 8-1, PageID.56.

Plaintiff now moves to vacate the arbitration award regarding his Title VII and FLSA claims, but not ELCRA or IWOWA claims. ECF Nos. 7 & 8. For the following reasons, Plaintiff's Motion to Vacate the Arbitration Award (ECF Nos. 7 & 8) will be **DENIED**.

## I. BACKGROUND

Defendant Utility Metering Solutions ("UMS") offers a wide range of services to municipalities, including but not limited to water meter installation. Compl., ECF No. 1, PageID.1, ¶ 2. UMS employed Plaintiff William Moore ("Moore") as a water meter installer from January 2018 until March 2020. *Id.* at ¶¶ 6, 21.

On May 7, 2021, Moore filed this lawsuit alleging that he was discriminated against, retaliated against, and wrongfully discharged in violation of state and federal law. *Id.* at PageID.5-11. On August 18, 2021, the parties stipulated to final and binding arbitration. ECF No. 6; Exhibit B, ECF No. 9-3, PageID.1352, ¶ 1 ("[A]ll legal disputes and claims between them shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described in this Agreement. . . The only legal disputes and claims excluded from this Agreement are . . . (c) actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award[.]"). A three-day arbitration hearing took place before the Honorable James J. Rashid

between June 26 and July 1, 2024 (Exhibits B, C, D), the parties submitted post-hearing briefs in September 2024, and the Arbitrator issued a written opinion on March 2, 2025 (Exhibit A). ECF No. 8-1, PageID.50.

The issues for the arbitrator were different from those in the original complaint: the remaining issues were (1) whether Moore was terminated because of his race, as an African-American man, in violation of Title VII and ELCRA, and (2) whether he was improperly paid in violation of the FLSA and IWOWA. ECF No. 1. Specifically, Plaintiff complained that UMS treated his absenteeism on February 28, 2020 differently from his white peers' absenteeism. As further explained below, UMS alleges Plaintiff was terminated after he failed to report to work on March 3, 2020 although Plaintiff asserts he reported to work that day. Plaintiff also complained that UMS failed to pay his wages in violation of FLSA and the Michigan IWOWA.

On March 2, 2025, the arbitrator found in favor of UMS, holding that Moore "failed to present evidence to establish that UMS violated the FLSA" or that "UMS violated the IWOWA," ECF No. 8-1, PageID.52-54, and "failed to establish that race was a factor in the decision to terminate his employment," such that Plaintiff's claims under Title VII and ELCRA were dismissed with prejudice. *Id.* at PageID.56.

On June 2, 2025, Moore filed the instant Motion to Vacate the Arbitration Award. ECF No. 8. He claims that (1) the arbitrator failed to

shift the burden onto UMS based on alleged evidence of improper recordkeeping for his FLSA claim, (2) the arbitrator improperly found that Moore was absent on March 3, 2020, and (3) the arbitrator failed to shift the burden onto UMS after Moore allegedly established a prima facie case of discrimination under Title VII. *Id.* Moore does not challenge the arbitrator's decision under IWOWA and ELCRA.

## II. LEGAL STANDARD

"The Federal Arbitration Act . . . expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (citing 9 U.S.C. § 9). Thus, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Id.* (citations omitted). In fact, "[u]nder this deferential standard of review, courts are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misinterpretation of the contract." *Shelby Cnty. Health Care Corp. v. Am. Fed'n of State, Cnty. & Mun. Emps., Loc. 1733*, 967 F.2d 1091, 1094 (6th Cir. 1992); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987) ("Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

The FAA and Sixth Circuit precedent identifies only four situations in which  a court may vacate an arbitration award: (1) where the award

4

was procured by fraud, (2) where the arbitrator was evidently partial or corrupt, (3) where the arbitrator misbehaved so that a party's rights were prejudiced, or (4) where the arbitrator exceeded his powers or executed them so that a final, definite award was not made. *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (citing 9 U.S.C. § 10(a)); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."). In addition, a reviewing court may vacate an award where the arbitrators have manifestly disregarded the law. *Dawahare*, 210 F.3d at 669; *see also In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022) (noting that the "manifest disregard of the law" test is "part and parcel of the statutory prohibition against the arbitrators' 'exceed[ing] their powers,' because 'arbitrators do not exceed their authority unless they display a manifest disregard of the law'") (citations omitted).

Given the strong federal policy in favor of enforcing arbitration agreements, *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983), the burden of proving that the arbitrators exceeded their powers is very great. *Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("A party seeking relief under that provision bears a heavy burden."). In fact, "[i]t is not enough . . . to show that the [arbitrator] committed an error—or

5

even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Thus, an arbitration award cannot be upset based on "mere error" in interpretation or application of the law, *Anaconda Co. v. District Lodge No. 27 of the International Association of Machinists and Aerospace Workers*, 693 F.2d 35, 37–38 (6th Cir. 1982), or error in factual determinations based on disputed or ambiguous evidence, *Nat'l Post Off., Mailhandlers, Watchmen, Messengers & Grp. Leaders Div., Laborers Int'l Union of N. Am., AFL-CIO v. U.S. Postal Serv.*, 751 F.2d 834, 843 (6th Cir. 1985). That is because "[t]he parties bargained for final and binding arbitration and, in the vast majority of cases, will be bound by the arbitrator's decision, right or wrong." *Anaconda*, 693 F.2d at 38.

But an arbitrator may be deemed to have exceeded his or her authority if he or she "refused to heed" a clearly defined applicable legal principle that is not subject to reasonable debate, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995), or the record demonstrates that the arbitrator "strong[ly] reli[ed]" on an unambiguous and undisputed mistake of fact, or a "clear misstatements of undisputed historical fact," in making the award, *Nat'l Post Off.*, 751 F.2d at 843. *See also Misco*, 484 U.S. at 38 ("[D]ecisions procured by the parties through fraud or through the arbitrator's dishonesty need not be enforced."); *In re Romanzi*, 31 F.4th at 375 (requiring "outrageous circumstances" to find manifest disregard and holding that failure to

6

identify evidence that the arbitrators were "aware" of relevant law that they "chose to ignore" was "fatal" to the claim).

Nonetheless, "[o]nly where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Lynch*, 70 F.3d at 421 (finding arbitrators' decision was "not so patently contrary to established legal precedents as to necessitate that the award be vacated" because there was "ample room for reasonable debate"); *see also Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 580–81 (6th Cir. 1979) ("Although a court is precluded from overturning an award for errors in the determination of factual issues, . . . if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated.") (citation omitted).

### III. DISCUSSION

Plaintiff's support for vacatur boils down to his claims that the arbitrator exceeded his authority by ignoring "undisputed and material evidence" of (1) recordkeeping violations, (2) Moore's presence at work on March 3, and (3) disparate treatment which he asserts would have required the arbitrator to shift the burden onto UMS pursuant to "controlling law under FLSA and Title VII." ECF No. 10, PageID.2424. The problem is that each of the arbitrator's factual determinations was "based on disputed or ambiguous evidence," as opposed to "undisputed

7

historical fact," *Nat'l Post Off.*, 751 F.2d at 843, which did not require the arbitrator to shift the burden the way Plaintiff asserts. Such factual findings are not reviewable by this Court; instead, "the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569.

### A.   FLSA Claim[1]

In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), the Supreme Court explained that an employee bringing a FLSA claim for unpaid minimum wages "has the burden of proving that he performed work for which he was not properly compensated." However, the employer has a duty to keep proper records of wages and hours. *Id.* at 687. Thus, "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Id.* But "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," the employee can carry his burden if he (1) "proves that he has in fact performed work for which he was improperly compensated" and (2) "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* Only then does the

---

[1] Because Plaintiff did not challenge the arbitrator's decision regarding his IWOWA claim, the Court need not address Defendant's argument regarding such claim. *See* ECF No. 9, PageID.1332-36.

burden "shift[ ] to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.

In the Motion to Vacate, Plaintiff argues "the record is replete with evidence that UMS did not maintain proper time records." *See* ECF No. 8, PageID.35-38. He argues that under controlling wage law, that evidence warrants shifting the burden of proof onto the employer, and the arbitrator's failure to do so amounted to manifest disregard of the law. But Plaintiff's argument is unavailing.

First, while Moore argues that there was "uncontested pay stubs showing compensation with zero hours recorded and testimony that UMS fabricated time entries after the fact," ECF No. 8, PageID.34, the arbitrator noted that "there was conflicting and at times confusing testimony on the subject." ECF No. 8-1, PageID.50. Plaintiff emphasizes that there was evidence suggesting that UMS's records were poorly kept or improper. Even so, that does not mean such evidence was credible or sufficient to allow the arbitrator to conclude that the records were inaccurate or inadequate. Furthermore, the arbitrator stated that "[d]uring the hearing, Plaintiff did not present any evidence or credible testimony refuting the accuracy of his payroll records." ECF No. 8-1, PageID.52.  The arbitrator concluded that, considering the record as a

whole, there was other evidence indicating Moore was paid hourly and supporting the records' accuracy. As the arbitrator explained:

> Moore was paid $15 per hour and was required to report to work even if he did not have any scheduled installation appointments. . . . [He] also had the opportunity to earn additional money above their base hourly pay through . . . production-based incentive ("PBI"), which is based on the number of meters installed. . . . Contrary to Plaintiff's claim that he was not paid hourly, his payroll records reflect occasions when he did not earn any PBI and was paid strictly based on the number of hours he worked. Plaintiff's own testimony acknowledged, as reflected by his payroll records, that he was paid overtime at time-and-a-half if he worked over forty hours during a workweek, which also conflicts with his claim that he was not paid hourly.

*Id.* at 50-52 (emphasis added). Thus, taking *all* the evidence into account—including the Letter of Understanding and Christy Lee's testimony—the arbitrator deemed Moore was paid hourly, not by the meter, and the arbitrator did not find the employer's records to be so "inaccurate or inadequate" so as to demonstrate that Moore "performed work for which he was not properly compensated." *See Anderson*, 328 U.S. at 687. This Court need not review the arbitrator's factual determinations of disputed facts that are supported by the record. *See Detroit Coil,* 594 F.2d at 580–81 (vacation appropriate where "the record . . . reveals no support whatever for [an arbitrator's] determinations"). And because Moore acknowledged receiving the compensation reflected in such "undisputed" payroll records, the arbitrator concluded Moore had

10

failed to meet his burden to show UMS violated FLSA. *Id.* Thus, it is not the case that "no judge or group of judges could conceivably come to the same determination as the arbitrator[.]" *Lynch*, 70 F.3d at 421.

Furthermore, even assuming the records were undisputably inaccurate, the burden would not shift onto the employer unless and until Moore "prove[d] that he has in fact performed work for which he was improperly compensated" and "produce[d] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *See Anderson*, 328 U.S. at 687. As mentioned earlier, the arbitrator found that Moore acknowledged receiving the compensation reflected in the records. In his Motion to Vacate, Moore failed to point to "sufficient evidence showing the amount and extent of [the] work" he alleged that he performed without proper compensation. Therefore, the arbitrator did not need to shift the burden onto UMS "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *See Anderson*, 328 U.S. at 687–88.

None of Moore's arguments support finding that the arbitrator exceeded his authority or acted in manifest disregard of the law in

concluding that Moore failed to meet his burden of establishing a violation of the FLSA.[2]

### B.     Title VII Discrimination Claim

The arbitrator found that Moore failed to establish that race was a factor in the decision to terminate his employment. ECF No. 8-1, PageID.56. Moore now argues that the arbitrator exceeded his authority by relying on a "clear misstatement of an undisputed fact"—that Moore did not report for work on March 3, 2020—to determine the reason for his termination. ECF No. 8, PageID.40. Moore also argues the arbitrator manifestly disregarded the law when he failed to shift the burden onto UMS after Moore made a prima facie case of discrimination under Title VII. *Id.* at PageID.46.[3]

### 1. March 3, 2020 No-Call/No-Show

Moore disputes the arbitrator's factual finding that he did not report to work on March 3, 2020, an absence which, according to the arbitrator, led to his termination.

Generally, arbitration awards cannot be upset "on grounds of erroneous findings of fact" when the arbitrator's factual determinations are based on *disputed* or ambiguous evidence. *Nat'l Post Off.*, 751 F.2d at

---

[2] Because Plaintiff's FLSA challenge fails, the Court need not address Defendant's argument that the FLSA claim is time-barred. *See* ECF No. 9, PageID.1327-29.

[3] The arbitrator also found that Moore failed to show a violation under ELCRA, but Moore did not explicitly challenge such decision in his Motion to Vacate the Arbitration Award.

843. But an arbitration award can be upset when the arbitrator relied on "clear misstatements of *undisputed* historical fact." *Id.* (emphasis added). "[W]hen *the* 'fact' underlying an arbitrator's decision is concededly a non-fact and where the parties cannot fairly be charged with the misapprehension, the award cannot stand." *Id.* (citing *Elecs. Corp. of Am. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO Loc. 272*, 492 F.2d 1255, 1257 (1st Cir. 1974)) (emphasis in original).

Here, Moore claims that there was "undisputed testimony and documentary evidence showing Moore reported to work" on March 3, 2020. ECF No. 8, PageID.34. As a result, he argues that the arbitrator's reliance on a mistake of fact—that Moore did not report to work on March 3—supports vacating the award regarding the discrimination claim.

But there are two problems with Moore's claim for vacatur. First, whether Moore timely reported to work before his termination was a fact in dispute, so consequently this alleged factual error cannot support vacatur of the award. *See Nat'l Post Off.*, 751 F.2d at 843. Even accepting Plaintiff's view of the evidence, at best, it suggests Moore eventually reported for work on March 3, but *late*, and *after* the decision to terminate him had already been made.

For instance, during the trial, Moore stated that Robi Gibson (Field Serviced Manager) had told him he had a 9 a.m. meter appointment on March 3. ECF No. 9-6, PageID.1647. Moore texted Robi at 6:30 a.m.that day, asking Robi to tell another employee, Aziz, to "stay there until [he]

13

get[s] there," and that he would help Aziz with his 8 a.m. appointment. ECF No. 10, PageID.2421. Robi responded that Aziz only had a 1:30 p.m. appointment that day. *Id.*

Moore testified he arrived at work on March 3 around 8:30 a.m. or "nine-ish," which he asserted was his "normal time." ECF No. 9-6 PageID.1648. But Christy Lee (Chief People Officer/Human Resources) testified that "[e]ven if they do not have appointments, all employees are due at work for 7:30 or 7:45, whatever their shift start time is, whether or not they have appointments . . . [b]ecause they can . . . do numerous [other] things." ECF No. 9-4, PageID.1403-04. And Rick Soper (Senior Field Services Manager) testified that Moore "didn't come in" on March 3. ECF No. 9-4, PageID.1429. Soper stated Robi and another employee, Russell, told him that Moore was not there at 8 a.m. *Id.* Soper stated they "should have started that [termination] process first thing in the morning," but they "gave [Moore] the benefit of the doubt and waited to 10 or 11:00 in the morning in hope that he would show up." *Id.* They hoped he would come in at his "regular time," which was usually nine or 9:30 a.m. *Id.* But Robi and Russell told Soper that Moore still was not there at 10 a.m. *Id.*

Moore stated that when he arrived, Soper told Moore he was fired and needed to talk to Jeremy Smith (National Construction Manager). *Id.* Moore then called Lee, who told him they were "standing behind the termination." ECF No. 9-4, PageID.1398. Call logs also show that Moore

14

and a supervisor, Jason Parker, had a 17-minute long phone conversation starting at 9:54 a.m. on March 3, ECF No. 8-9, PageID.1305, which Moore stated was about the termination, ECF No. 9-6, PageID.1649. Then Moore stated he left the premises and drove to meet Robi in the CVS parking lot in the morning, but the recorded conversation does not have timestamps. ECF No. 9-6, PageID.1649.

Thus, the record contains support for the arbitrator's determination that Moore did not report to work on March 3, at least not in a timely fashion, thereby justifying his termination. *See Detroit Coil,* 594 F.2d at 580–81 (vacation appropriate where "the record . . . reveals no support whatever for [an arbitrator's] determinations"). As a result, it cannot be said that it was "undisputed" that Moore reported to work. Moore's argument is therefore rejected where the factual dispute was resolved by the arbitrator. *See Nat'l Post Off.*, 751 F.2d at 843; *Misco*, 484 U.S. at 37 ("Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

Second, even if it were undisputed that Moore reported to work on March 3, the arbitrator's contrary conclusion, that he failed to report, was not "*the*" only fact underlying the arbitrator's conclusion that race was not a factor in his termination. *See Nat'l Post Off.*, 751 F.2d at 843. In fact, the arbitrator also found that UMS could have terminated Moore for the February 28 no-call/no-show as well as for his "disrespectful conduct

15

towards Soper and Smith on March 2, 2020." ECF No. 8-1, PageID.56. Therefore, because the arbitrator did not solely rely on what Plaintiff believes was an erroneous undisputed fact in making his decision, vacatur is unwarranted. *See Industrial Mutual Ass'n v. Amalgamated Workers*, 725 F.2d 406, 411 n. 1 (6th Cir. 1984) (even if arbitrator's finding was unsupported by the record, he "did not rely on this finding in rendering his award," and vacatur therefore would be improper); *compare Elecs. Corp. of Am.*, 492 F.2d at 1257 (describing "gross mistake" regarding "essential fact," "but for which, according to the arbitrator's rationale, a different result would have been reached").

Therefore, the arbitrator did not exceed his authority or manifestly err when he determined that Moore did not report to work on March 3, 2020.

### 2. Prima Facie Case

Finally, Plaintiff argues the arbitrator manifestly disregarded the law by failing to apply the burden-shifting framework applicable to employment discrimination claims under Title VII:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. . . . The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for [its actions]. . . . [The complainant] must [then] be afforded a fair opportunity to show that [the employer]'s stated reason for [its actions] was in fact pretext.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

Even assuming the burden-shifting framework applied at the trial stage,[4] the burden only shifts to the employer if the plaintiff establishes a prima facie case of discrimination. As the arbitrator stated:

> To prevail on this claim, Mr. Moore must first establish a prima facie case by showing that he 1) is a member of a protected class, 2) subjected to an adverse employment action, 3) was qualified for the position and 4) was treated less favorably than a similarly situated employee outside of the protected class.

ECF No. 8-1, PageID.54. But based on the evidence in the record, the arbitrator found that Moore failed to establish the fourth element, that he was treated less favorably than a similarly situated employee outside of the protected class. In light of such a finding, the arbitrator would not have been required to shift the burden onto the employer to identify a legitimate non-discriminatory reason for its termination decision, nor would he need to consider evidence that such a reason was merely a pretext, such as failure to follow internal policy as Plaintiff asserted.

Plaintiff does not argue the arbitrator manifestly disregarded the law or relied on an undisputed mistake of fact when he found Moore did not meet his prima facie case. Rather, he simply rehashes arguments

---

[4] Defendant asserts that the burden-shifting framework is applicable at the motion-for-summary-judgment stage, not at the trial stage.

already considered by the arbitrator to argue he did establish a prima facie case of discrimination. He claims that:

> The record contains compelling evidence that supports . . . a prima face case . . . . Moore, a Black employee, was disciplined for being absent on February 28, 2020, even though he gave notice of the absence. Two white employees . . . missed work the same day and were not disciplined. (Vol I pp 273-274). Soper testified that they were excused for travel reasons, but there is no documentation of such accommodations or any policy explaining the discrepancy. The arbitrator failed to address this comparator evidence.

ECF No. 8, PageID.46. But the arbitrator already considered—and rejected—this argument:

> Plaintiff claims he told Gipson that he would not be in on February 28 because he did not have any scheduled appointments, the Company stated that he was still required to report to work and does not get to choose when he wants to come in. Plaintiff admits that Gipson did not tell him not to come in. Plaintiff also admits that no UMS supervisor or manager ever told him, either verbally or in writing, that he was not required to report to work on February 28.
>
> Plaintiff maintains that he was treated differently than two Caucasian installers (Caleb and Tyler). However, unlike Plaintiff, the evidence established that Caleb and Tyler, who lived in Ohio, requested and received prior approval to take off February 28. As noted above Plaintiff[']s own testimony establishes that he was not given any such approval for his absence on February 28.

ECF No. 8-1, PageID.55. Thus, to the extent Moore argues the comparative failure to pre-approve his request was race-based, such arguments are but "thinly veiled attempts to relitigate factual

18

determinations" rather than a manifest-disregard claim based on the law. *See Murray v. Citigroup Glob. Mkts., Inc.*, 511 F. App'x 453, 455 (6th Cir. 2013) (rejecting manifest-disregard claim in part because "none of [appellant's] arguments derive from a law-based analysis," but were instead "thinly veiled attempts to relitigate factual determinations").

The Court concludes that Moore failed to show that the arbitrator exceeded his authority in dismissing the discrimination claim.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's Motion to Vacate the Arbitration Award is **DENIED**.

**SO ORDERED.**

Dated: March 17, 2026            /s/Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE

19